IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: marchFIRST, INC., et al., | ) | CHAPTER 7 |
| | ) | |
| Debtors | ) | |
| _____ | ) | |
| CIT COMMUNICATIONS FINANCE | ) | No. 08 CV 121 |
| CORPORATION f/k/a Newcourt | | |
| Communications Finance Corporation, | | |
| | ) | HONORABLE DAVID H. COAR |
| Plaintiff-Appellant | | |
| v. | ) | |
| ANDREW J. MAXWELL, personally and in | ) | |
| his capacity as Trustee of the Estates of | | |
| marchFIRST, Inc., et al., | | |
| | ) | Bankruptcy Case No. 01 B 24742 |
| Defendant-Appellee | ) | Bankruptcy Adv. No. 07 A 00379 |
| | ) | |
| | ) | Appeal From the Honorable |
| | ) | Judge John D. Schwartz. |

**MEMORANDUM OPINION AND ORDER**

CIT Communications Finance Corporation appeals the bankruptcy court's dismissal of its adversary complaint against Andrew Maxwell, trustee of the estates of marchFIRST, Inc., and others (collectively, "Debtors"). In its complaint, CIT alleged that it had leased telephone equipment to the Debtors and that, as a result of Maxwell's wrongful acts, the equipment was never returned after the leases expired. The bankruptcy court concluded that CIT's allegations show that it knew or should have known that it was wrongfully deprived of its property more than five years ago, and that the complaint is therefore time-barred under Illinois law. The bankruptcy court dismissed the complaint with prejudice, yielding a final judgment reviewable

1

by this court under 28 U.S.C. § 158(a)(1). This court affirms the judgment of the bankruptcy court.

## Background

Because the bankruptcy court dismissed CIT's complaint on the pleadings, at this stage the court will treat as true all well-pleaded allegations in the complaint, drawing all possible inferences in CIT's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The court also may take judicial notice of facts in the record of the bankruptcy proceedings. *Menominee Indian Tribe of Wisc. v. Thompson,* 161 F.3d 449, 456 (7th Cir. 1998). Because the primary issue in this appeal is the timeliness of the complaint, the court recites the facts chronologically.

On April 12, 2001, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, *see* 11 U.S.C. §§ 101 *et seq.*, in the United States Bankruptcy Court for the District of Delaware. At the time, the Debtors still possessed telephone equipment leased from CIT, who filed an appearance in the bankruptcy court on April 23, 2001. On April 25, 2001, the court converted the Debtors' petitions to Chapter 7 filings, *see id.* § 701 *et seq.*, and appointed Michael Josephs as trustee. Sixty days later, on June 26, 2001, the Debtors' unexpired leases—including its leases with CIT—were deemed rejected pursuant to 11 U.S.C. § 365(d)(1). On that same day the bankruptcy court authorized trustee Josephs to retain Bottom Line, Inc., as a liquidation consultant. On July 10, 2001, the cases were transferred to the United States Bankruptcy Court for the Northern District of Illinois, where, on July 13, 2001, Maxwell was appointed to replace Josephs as trustee of the Debtors' estate.

Upon Maxwell's appointment, CIT began its attempts to retrieve its telephone equipment. On July 20, 2001, CIT wrote to Maxwell's attorney to arrange for the equipment's

return, but Maxwell advised CIT to contact other persons, who ultimately "stonewalled," and denied CIT access to the Debtors' facilities. Maxwell also did not file a complete inventory of the Debtors' possessions within 30 days of his appointment.

On October 10, 2001, CIT filed an administrative expense claim against the estate, seeking postpetition rental fees and other costs for its telephone equipment, which CIT claimed the Debtors were still using. (Bankr. Case No. 01 B 24742, Doc. 297.) Maxwell publicly disagreed with that contention, though, in his "Statement of Financial Affairs," entered in the docket on November 8, 2001, where he represented that the Debtors did not hold any property owned by another person. (Bankr. Case No. 01 B 24742, Doc. 425.)

Thirteen months later, on December 12, 2002, CIT amended its earlier claim for administrative expenses to reflect that, along with the unpaid leasing fees, it was seeking the full value of its equipment. CIT wrote that some time after October 11, 2001, it had learned that Maxwell "had breached his fiduciary duty to gather, administer and turnover some of the Equipment to CIT," leading to the conversion of its equipment. (Bankr. Case No. 01 B 24742, Doc. 1106.) Maxwell filed objections to the claim, which was never resolved.

Four and a half years later, on May 7, 2007, CIT filed in the bankruptcy court the adversary complaint at issue here. *See* 28 U.S.C. § 157(b)(2)(A). In its first two claims, CIT alleges that Maxwell, in his official and personal capacity, breached his fiduciary duty to CIT by (a) failing to file a complete inventory for the Debtors within 30 days of qualifying as trustee (i.e., by August 12, 2001), (b) falsely representing that the Debtors were not holding anyone else's property in his statement of financial affairs of November 8, 2001, (c) failing to safeguard CIT's equipment, (d) ignoring CIT's requests for return of the equipment, and (e) failing to inspect the Debtors' premises for property not belonging to the estate before relinquishing

3

control of the premises. CIT also alleges that, in improperly disposing of its equipment, Maxwell acted outside of his mandate (*ultra vires*), and that he breached his duty as a constructive bailee of the equipment.

Maxwell filed a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6), incorporated for banrkuptcy proceedings by Fed. R. Bankr. P. 7012(b). He argued, among other things, that CIT contravened the *Barton* doctrine by not requesting leave of the court before filing its complaint, *see Barton v. Barbour*, 104 U.S. 126, 127 (1881), and that CIT's complaint is barred by Illinois's five-year statute of limitations for claims involving personal property or a breach of a fiduciary duty, *see* 735 Ill. Comp. Stat. 5/13-205 (West 2007).

The bankruptcy court agreed with Maxwell that CIT violated the *Barton* doctrine by not seeking leave of the court before filing an adversary claim against him there. (Plaintiff-Appellant's App'x, Tab 2 at 6.) According to the bankruptcy court, to achieve the policy interests underlying the *Barton* doctrine, leave of court is always required before a trustee may be sued while a bankruptcy case is pending, even if the suit is filed in the bankruptcy court. (Id.) This court doubts that conclusion. The *Barton* doctrine has three main purposes: (1) to maintain the integrity of the bankruptcy court's jurisdiction; (2) to control burdensome litigation that may impede the trustee's work as an officer of the court; and (3) to allow the bankruptcy court to monitor effectively the trustee's work. *See In re Linton*, 136 F.3d 544, 545-46 (7th Cir. 1998). When a party sues the trustee in the same bankruptcy court that appointed her trustee, it reinforces rather than undermines these goals; the bankruptcy court maintains control over all matters relating to the bankruptcy proceeding, can effectively screen complaints against the trustee, and can monitor the trustee's work. *See, e.g., Beck v. Fort James Corp. (In re: Crown Vantage, Inc.)*, 421 F.3d 963, 971 (9th Cir. 2005) (noting the *Barton* doctrine exists to ensure

4

that "all legal proceedings that affect the administration of the bankruptcy estate be brought *either* in bankruptcy court *or* with leave of the bankruptcy court.") (emphasis added).

But the bankruptcy court's interpretation of the *Barton* doctrine was *dictum*; the court ultimately dismissed the complaint as untimely. (Id. at 6-9.) The court disagreed with CIT's contention that its claims accrued on or immediately before December 12, 2002, when the company first publicly claimed that Maxwell had breached his fiduciary duty to CIT. The court noted that CIT had sought the return of its property as early as July 20, 2001, and that CIT should have been on notice that it may have been wronged when its requests went unfulfilled. At the latest, wrote the court, in Maxwell's statement of financial affairs, entered in the docket on November 8, 2001, he averred that the Debtors no longer held any property belonging to another person—a representation that should have alerted CIT that there was a disagreement about the status of its property and trigerred CIT's inquiry. In either case, said the court, the May 7, 2007 complaint is too late.

On appeal, CIT argues that, in finding that its claims accrued more than five years before the complaint was filed, the bankruptcy court did not apply liberal notice-pleading rules. The accrual date was in dispute, argues CIT, because it had alleged that Maxwell concealed the potential claims by employing "delaying tactics." And, according to CIT, if its allegations are viewed in the light most favorable to it, its claims did not accrue until December 2002, when the company publicly acknowledged its discovery of Maxwell's alleged misconduct.

**Legal Standard**

On appeal in the district court, a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *Monarch Air Serv. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir. 2004). "Where both the relevant law and the

5

specific facts are clear, and the job of the bankruptcy court was to apply the law to the facts in the case, we reverse that court's conclusion only if clearly erroneous." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002).

Even after *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007), notice pleading is all that is required for a complaint in federal court: "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal citation and quotation marks omitted); *see* Fed. R. Civ. P. 8(a)(2). But a plaintiff's allegations also must show that it is "plausible, rather than merely speculative, that he is entitled to relief." *Id.* And if a plaintiff pleads too much, including facts that establish an affirmative defense like the statute of limitations, "the defendant may use those facts to demonstrate that [the plaintiff] is not entitled to relief." *Tamayo*, 526 F.3d at 1086; *see Jones v. Bock*, 127 S. Ct. 910, 920-21 (2007); *Leavell v. Kiefer*, 189 F.3d 492, 495 (7th Cir. 1999). Dismissal is appropriate only if, after accepting as true all facts in the complaint, the plaintiff cannot plausibly succeed. *Tamayo*, 526 F.3d at 1086.

**Analysis**

The court first considers whether it is plausible, given CIT's allegations, that its claims accrued less than five years before it filed the complaint. Under Illinois's discovery rule—which both parties agree governs—CIT's claims accrued when CIT knew, or should have known, that it had been injured and that the injury may have been wrongfully caused. *See Whitlock Corp. v. Deloitte & Touche, L.L.P.*, 233 F.3d 1063, 1065 (7th Cir. 2000) (citing *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981). On the date of accrual, CIT did not have to be certain that its injury had been wrongfully caused, nor did it need to know *who*, specifically, caused the

6

injury; accrual occurred once CIT had enough information that would cause a reasonable person to commence an inquiry, and the time began to run against all "potentially responsible persons." *See Whitlock*, 233 F.3d at 1065-66.

It is apparent from the complaint that CIT knew it had been injured shortly after June 26, 2001, when its property was not returned after the leases had been rejected. And, viewing the complaint in the light most favorable to CIT, it is also clear that CIT should have known that the injury might have been wrongfully caused shortly after July 20, 2001, when Maxwell and others failed to honor CIT's requests for the return of its equipment. By that time CIT had enough information to cause a reasonable person to commence an inquiry, and its suspicions should have grown in August 2001, when Maxwell did not file a complete inventory of the property held by the Debtors. By November 8, 2001, when Maxwell publicly represented that the Debtors no longer possessed any property belonging to others, CIT certainly should have known that Maxwell may have wronged CIT—either by failing to secure and return its equipment, or by falsely representing that the Debtors no longer possessed it.

CIT contends, however, that Maxwell fraudulently concealed his wrongdoing by redirecting CIT's requests for return of the property to individuals who "stonewalled," and by denying access to the Debtors' facilities. CIT argues that, even if it should have discovered its potential claims earlier, there is a dispute of fact regarding whether Maxwell's concealment prevented CIT from discovering his wrongdoing until December 2002. If that contention is plausible given CIT's allegations, then CIT would have had until December 2007 to file its complaint. *See* 735 Ill. Comp. Stat. 5/13-215 (West 2007).

Fraudulent concealment consists of "affirmative acts designed to prevent discovery of a cause of action or grounds for relief." *Lipscomb v. Wells*, 761 N.E.2d 218, 222 (Ill. Ct. App.

7

2001). The term "denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990).

As an initial matter, some of the "concealment" that CIT has identified—particularly Maxwell's failure to fulfill CIT's requests for the return of its equipment—is the same wrondoing that CIT alleges as a ground for relief. Those acts are not fraudulent concealment. *See Cada*, 920 F.2d at 451. And though it is plausible that Maxwell refused CIT access to the Debtors' premises to prevent CIT from discovering its potential claims, nothing prevented CIT from making that discovery on November 8, 2001, when Maxwell publicly represented that the Debtors did not possess anyone else's property. That public declaration clearly put CIT on notice either that its equipment had been wrongfully transferred to someone else, or that Maxwell had lied about the equipment's whereabouts. In either case, CIT knew it had been injured, and it knew or should have known that the injury may have been wrongfully caused. It had five years to conduct an inquiry, and the statute of limitations expired no later than November 8, 2006. Accordingly, it is apparent from CIT's allegations that its May 7, 2007 complaint is too late.

## Conclusion

For the reasons stated above, this court affirms the bankruptcy court's order dismissing CIT's complaint. This case is closed.

Enter:

/s/ David H. Coar
_____

8

                                              David H. Coar
                                              United States District Judge

Dated: September 12, 2008